AO 91 (Rev. 11/11) Criminal Complaint                    AUSA Christopher V. Parente (312) 886-2447

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

OCT 11 2019

UNITED STATES OF AMERICA

v.

DORA KUZELKA;
KENNETH KUZELKA;
KARI KUZELKA; and
KEITH KUZELKA

CASE NUMBER:

**UNDER SEAL**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**19 CR 780**

MAGISTRATE JUDGE WEISMAN

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

From in or around October 2017 to on or about June 10, 2019, at Streamwood, in the Northern District of Illinois, Eastern Division, the defendants violated:

| Code Section | Offense Description |
|---|---|
| **Count 1:**<br>Title 8, United States Code, Section 1324(a)(1)(A)(iii) | knowing and in reckless disregard of the fact that an alien had come to, entered, or remained in the United States in violation of law, did conceal, harbor, and shield from detection such alien, namely, Y.R., at KSO MetalFab, Inc. |

**FILED**

OCT 11 2019

M. DAVID WEISMAN
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

From in or around October 2017 to on or about August 29, 2019, at Streamwood, in the Northern District of Illinois, Eastern Division, the defendants violated:

| Code Section | Offense Description |
|---|---|
| **Count 2:**<br>Title 8, United States Code, Section 1324a(f)(1) | Engaging in a pattern or practice of hiring for employment in the United States an alien, namely, R.A., J.C., M.C., T.C., G.D., D.G., D.H., O.J., E.M., Aa. P., Al. P., A.R., F.S., M.S., V.T., L.V., M.Y. and J.Z., knowing the alien was an unauthorized alien with respect to such employment. |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

_____

RYAN RIBNER
Special Agent, Homeland Security Investigations (HSI)

Sworn to before me and signed in my presence.

Date: October 11, 2019

_____
*Judge's signature*

City and state: Chicago, Illinois

M. DAVID WEISMAN, U.S. Magistrate Judge
*Printed name and Title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, RYAN RIBNER, being duly sworn, state as follows:

1.     I am a Special Agent with Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations (HSI) and have been so employed since approximately March 2009. Prior to my employment with ICE, I worked in law enforcement as a police officer for the Oak Park Police Department, Forest View Police Department, and the Burlington Northern Santa Fe Railroad Police.

2.     I am currently assigned to the Special Agent in Charge (SAC) office of HSI in Chicago. I have been assigned to the Worksite Enforcement Investigative Unit (WSE).  The Worksite Enforcement Unit investigates civil and criminal violations relating to the employment of unauthorized aliens. As part of my duties as a Special Agent with ICE-HSI, I investigate criminal violations of the federal laws.

3.     This affidavit is submitted in support of a criminal complaint alleging that DORA KUZELKA, KENNETH KUZELKA, KARI KUZELKA, and KEITH KUZELKA (collectively "the KUZELKAS") have violated Title 8, United States Code, Sections 1324(a)(1)(A)(iii) and 1324a(f)(1).  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging the KUZELKAS with alien harboring and a pattern and practice of unlawful employment of aliens, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are

necessary to establish probable cause to believe that the defendants committed the offenses alleged in the complaint.

4.     This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and upon information provided by witnesses and review of documents and records which were provided voluntarily, are publicly available and/or have been obtained pursuant to subpoena.

## I.     BACKGROUND

5.     On or about May 21, 2015, HSI Chicago received a tip alleging that KSO METALFAB, Incorporated ("KSO") was employing approximately 40 illegal aliens. KSO is a metal fabrication company located in Streamwood, Illinois, that produces sheet metal fabrication and also provides machining for metallic-based products. HSI conducted a civil audit of KSO to determine if the allegation regarding the employment of illegal aliens was correct.

6.     The civil audit revealed that 36 of KSO's 67 person workforce were using suspect fraudulent work authorization documents to verify their eligibility for employment in the United States. On September 6, 2017, HSI personally served to an employee of KSO a Notice of Suspect Documents (NOSD) letter listing each of the 36 KSO employees who had used suspected fraudulent documents. On September 14, 2017, KSO officials sent a letter to HSI attesting that they had terminated all of 36 of the identified employees.  The KSO letter was signed by DORA KUZELKA as President of KSO and identified the names, purported social security numbers, and date of termination for each of the 36 identified employees.

7.      In December 2018, KEITH KUZELKA contacted HSI and stated that KSO had re-hired approximately 20 to 25 of the 36 previously terminated illegal aliens. KEITH KUZELKA stated that KSO utilized a staffing agency, Company A, to rehire the same workers that KSO had terminated from employment after the HSI civil audit. The majority of these illegal aliens were using the same names they used before the HSI civil audit.[1]  KSO officials instructed the illegal aliens to go to Company A so that KSO could hire them back following the HSI civil audit. While Company A paid the workers their weekly wages, KSO paid the workers overtime payments in cash. KSO officials also determined the illegal aliens hours, position, salary, and discipline. As detailed below, subsequent law enforcement investigation corroborated the claims made by KEITH KUZELKA and confirmed that KSO had rehired approximately at least 18 of the previously-terminated illegal alien employees.

### BACKGROUND OF KSO METAL FABRICATION COMPANY

8.      KSO is a family-owned business with its principal office located in Streamwood, Illinois. KSO is a manufacturer of metal goods and is a supplier for companies that have contracts with municipal transit companies throughout the United States. KSO also provides original manufacture equipment (OEM's) for

---

[1] The majority of these illegal alien employees had worked at KSO for years prior to the HSI civil audit and thus were believed to be known by name to KSO management. Additionally, KEITH KUZELKA and Y.R. described the culture of KSO as a family business where management and employees were familiar with each other and at times socialized together outside working hours.

various entities including the computer, fast food, telecommunications, medical and gaming industries.

9.    KSO was incorporated under the laws of the State of Illinois on or about March 19, 1973.   KSO has approximately 50 active employees and contracts for products in several states to include California.

10.    A record check with the Illinois Secretary of State list that KSO is an active corporation in good standing under file number 50201201.  The records show that DORA KUZELKA is the President of the corporation and KARI J. KUZELKA is the Secretary of the corporation.

**A.     APRIL 2017 HSI CIVIL AUDIT OF KSO**

11.    On or about April 11, 2017, HSI Chicago issued a Notice of Inspection ("NOI") to KENNETH KUZELKA, one of the managing owners of KSO. After the enactment of the Immigration Reform and Control Act in 1986, employers were required to verify the identity and employment eligibility of their employees on an Employment Eligibility Verification Form I-9 (Form I-9). Section 274A (b) of the Immigration and Nationality Act (INA), codified in 8 U.S.C. § 1324a (b), requires employers to verify the identity and employment eligibility of all individuals hired in the United States after November 6, 1986. 8 C.F.R. § 274a.2 designates the Form I-9 as the means of documenting this verification. Employers are required by law to maintain for inspection original Forms I-9 for all current employees. Criminal penalties and civil sanctions are provided for under the Immigration and Nationality

Act for the knowing employment of unauthorized aliens and other employment related violations.

12.    KENNETH KUZELKA accepted the service of the NOI and the scope of the audit was limited to the current employees that KSO had in service as of April 11, 2017, and for whom a Form I-9 Verification of Employment Eligibility form was required to be maintained by the law. Subsequently, Individual A, who was the Director of Administration and Human Relations Manager at KSO, and KENNETH KUZELKA, provided HSI with a list of the names of 70 current employees, as well as a total of 64 Forms I-9 in response to the NOI letter.

13.    The civil audit conducted by HSI concluded that KSO had been responsible for providing to HSI a total of 67 Forms I-9 for their current employees. HSI performed database checks and concluded that KSO had 46 substantive verification violations that were subject to civil fines under 8 USC § 1324a(b). A total of 36 employees at KSO were found to have used suspect work authorization documents such as social security cards with numbers either did not exist or that did not relate to that particular individual.

14.    On or about September 6, 2017, HSI met with DORA KUZELKA, KENNETH KUZELKA, and KSO's HR Manager, Individual A, and served them with the Notice of Suspect Documents letter (NOSD) listing the 36 KSO employees that had been identified by database checks as having used suspect work authorization documents to support their eligibility for employment on their Form I-9. HSI informed KSO managers that any employee who wished to dispute their inclusion on

the NOSD letter had the right to present new or additional documentation to verify their employment eligibility. HSI requested that KSO inform them of any new documents that any employee presented to re-verify their work authorization so that HSI could check the validity of the new documents.

15.     Agents informed the KSO managers that they had 10 business days to verify the employment eligibility of the listed employees. HSI requested that KSO draft a letter on company letterhead detailing what actions were taken in regards to each of the named employees on the NOSD letter and, if the employee was terminated, listing the actual termination date.[2]

16.     On September 14, 2017, Individual A emailed HSI agents a letter on KSO letterhead signed by DORA KUZELKA. The letter listed the following 36 employees, the Social Security Numbers that they had used in completing their respective Forms I-9, and their date of termination from KSO employment, as listed below:

    1. R.A. xxx-xx-3147[3] 8/25/2017
    2. J.A. xxx-xx-0655 7/28/2017
    3. M.A. xxx-xx-4985 7/1/2017
    4. J.C. xxx-xx-3641 6/2/2017
    5. L.C. xxx-xx-6650 9/12/2017
    6. Al. C. xxx-xx-3299 4/20/2017
    7. An. C. xxx-xx-1072 9/13/2017
    8. J.C. xxx-xx-8109 9/7/2017
    9. R.C. xxx-xx-8856 9/7/2017
    10. M.C. xxx-xx-3154 8/25/2017

[2] Two KSO employees contested their inclusion on the NOSD and successfully established their work authorization and HSI issued a Change to the NOSD letter which removed their names from the NOSD letter.

[3] All social security numbers in this affidavit are redacted; the original letter contained the full nine-digit social security number.

11. T.C. xxx-xx-3723 9/12/2017
12. M.C. xxx-xx-9087 9/12/2017
13. G.D. xxx-xx-638 4/29/2017
14. M.G. xxx-xx-5634 8/25/2017
15. D.G. xxx-xx-5408 6/2/2017
16. D.H. xxx-xx-9090 9/8/2017
17. O.J. xxx-xx-4231 4/29/2017
18. G.L. xxx-xx-1016 4/21/2017
19. E.L. xxx-xx-3568 4/26/2017
20. E.M. xxx-xx-3462 4/26/2017
21. Ja. M. xxx-xx-0345 5/4/2017
22. Je. M. xxx-xx-4872 9/8/2017
23. A.M. xxx-xx-0383 9/7/2017
24. M.M. xxx-xx-6360 no show since 9/8/17. Term
25. J.N. xxx-xx-5643 4/19/2017
26. O.M. xxx-xx-1139 6/23/2017
27. Aa. P. xxx-xx-0128 5/4/2017
28. Al. P. xxx-xx-3872 9/12/2017
29. V.R. xxx-xx-1923 9/13/2017
30. A.R. xxx-xx-1239 8/24/2017
31. F.S. xxx-xx-6952 9/1/2017
32. M.S. xxx-xx-3641 9/7/2017
33. V.T. xxx-xx-7878 4/26/2017
34. L.V. xxx-xx-3882 9/1/2017
35. M.Y. xxx-xx-9876 8/25/2017
36. J.Z. xxx-xx-2641 9/1/2017

17.     Based on my training and experience, I know illegal aliens often purchase fraudulent identity documents in order to obtain employment in the United States. During this criminal investigation, the September 2017 letter was provided to the U.S. Social Security Administration ("SSA"). The SSA advised that, as of February 4, 2019, 33 of the 36 listed employees' social security numbers were not assigned to the aforementioned employees. Further, according to the SSA, L.C., M.M., and O.M. had the social security number they had listed assigned to their named identities.

18.    On March 22, 2018, DORA KUZELKA, KENNETH KUZELKA, KEITH KUZELKA and KARI KUZELKA met with HSI agents and were served a Notice of Intent to Fine (NIF) containing ten counts of civil verification violations under 8 U.S.C. §1324a(b) and including a total civil fine in the amount of $76,801.95. The bases for the civil verification related to KSO's failure to submit the I-9 forms for all employees, its failure to timely fill out and submit the employer section on some of the I-9 forms, and its failure to make sure employees presented approved identification documents. HSI agents explained to the KUZELKAS the basis for each of charged civil violations at this meeting.

19.    On April 11, 2018, HSI met with KEITH KUZELKA who signed a Settlement Agreement reducing the total of the civil fine to $69,122.00. KEITH KUZELKA was served with behalf of KSO a Final Order on Form I-764 by HSI that stated: "Pursuant to a written agreement between the parties, the matter has been settled without an administrative hearing and, in that agreement, the Respondent admitted to violating §274a(1)(b) of the Immigration and Nationality Act 8 U.S.C. §1324 a(a)(1)(b)." KSO was also ordered to "cease and desist from such violations."

**B.    KEITH KUZELKA'S STATEMENTS**

20.    In December 2018, KEITH KUZELKA[4] contacted law enforcement and stated that KSO was again employing many of the illegal aliens that were terminated

---

[4] KEITH KUZELKA has no criminal history and no promises or payments have been made to him for his cooperation. KEITH KUZELKA worked for KSO from approximately 2010 until September 18, 2018, when he was terminated from employment. KEITH KUZELKA's split from KSO was not amicable and KSO has alleged that KEITH KUZELKA stole approximately $40,000 from KSO. KEITH KUZELKA also currently owns a similar metal fabricating business and is competing for business with KSO. Information gathered by law

by KSO after the HSI civil audit occurred in 2017. According to KEITH KUZELKA,

the illegal alien rehiring scheme involved KSO management entering into a contract

with Company A in order to bring former illegal alien employees who were terminated

by KSO as a result of the HSI civil audit back to their former jobs at KSO without

exposing KSO to any legal liability for rehiring known illegal aliens. In order to

remain profitable and meet its contractual obligations, KSO management decided to

continue using between 20 to 25 of the 36 workers that HSI had told the company

were unauthorized for employment on September 6, 2017. Company A was utilized

to return these illegal alien former employees to KSO as temporary staff employed

directly by Company A.

21.     KEITH KUZELKA explained that KSO paid Company A a fee in

addition to the worker's wages to directly employ these illegal alien workers and route

them back to KSO as temporary staff. These illegal workers returned to their prior

position and job duties at KSO and were paid approximately the same hourly wage

by Company A that they had received previously from KSO. Additionally, KSO

directly paid these former employees for any overtime work done at KSO in excess of

50 hours in the form of checks made payable to "cash."

22.     On or about December 7, 2018, I met with KEITH KUZELKA. KEITH

KUZELKA stated that KSO earns about $8-$9 million a year and is owned by the

KUZELKA family.   KEITH KUZELKA stated DORA KUZELKA is 51% owner,

---

enforcement during this investigation revealed that in interviews with law enforcement
KEITH KUZELKA minimized his involvement in the alien harboring and alien hiring
scheme.

KENNETH KUZELKA holds about 19% ownership, and KARI KUZELKA holds about 8-9% ownership.

23.    KEITH KUZELKA advised that KENNETH KUZELKA and DORA KUZLEKA are responsible for the office operations and that KSO management utilizes an employee named Y.R. as a translator to speak to the employees who only understand Spanish.

24.    KEITH KUZELKA explained that KSO utilized Company A to hire back the illegal aliens.  KEITH KUZELKA advised that KENNETH KUZELKA told Y.R. to tell the illegal aliens who were terminated after the 2017 civil audit to go to Company A in order to return to their old positions at KSO. KEITH KUZELKA stated that he believed KENNETH KUZELKA used Company A to protect KSO from being held accountable by HSI for re-hiring of these illegal aliens if another HSI audit were conducted on KSO in the future.   KEITH KUZELKA further stated that he and KENNETH KUZELKA met with a representative from Company A around April 2017 regarding utilizing Company A's employment services.   KEITH KUZELKA stated KSO later engaged Company A for services and KENNETH KUZELKA signed the contract on behalf of KSO with Company A.

25.    KEITH KUZELKA was shown the HSI NOSD letter dated September 6, 2017, and identified the following 18 workers who KEITH KUZELKA claimed to be again working at KSO:

    R.A., xxx-xx-3147
    J.C., xxx-xx -3641
    M.C., xxx-xx -3154
    T.C., xxx-xx -3723

G.D., xxx-xx -6380
D.G., xxx-xx -5408
D.H., xxx-xx -9090
O.J., xxx-xx -4231
E.M., xxx-xx -3462
Aa. P., xxx-xx -0128
Al. P., xxx-xx -3872
A.R., xxx-xx -1239
F.S., xxx-xx -6952
M.S., xxx-xx -3641
V.T., xxx-xx -7878
L.V., xxx-xx -3882
M.Y., xxx-xx -9876
J.Z., xxx-xx -2641

26.     KEITH KUZELKA explained that when he worked at KSO, he was responsible for filing hourly employment paperwork. KEITH KUZELKA explained that KENNETH KUZELKA would sign the hourly paperwork and approve the payroll. Once the payroll paperwork was filled out for the Company A employees, Company A would be responsible for paying the worker their wages in a paycheck.[5] KSO would send Company A one check of approximately $20,000 a week to cover the employee wages and Company A's contractual fees for providing the temporary workers. KEITH KUZELKA stated that DORA KUZELKA was responsible for drafting those checks to COMPANY A.

---

[5] In March 2019, Agents received a return for a Grand Jury subpoena served on Itasca Bank for records related to KSO. According to a review of the records from Istaca Bank, from July 2017 to February 2019, KSO provided Company A approximately 73 checks for an approximate total of: $1,226,020.06. In March 2019, KEITH KUZELKA stated that he believes that per KSO's contract with Company A, Company A receives 30% of the employees' payroll.

27.     KEITH KUZELKA stated that many of the Company A temporary employees worked up to 80 hours a week.  KEITH KUZELKA explained that KSO had a practice of paying up to 10 hours of overtime hours at the time and a half rate, but, for overtime hours beyond 10 hours, KSO only pays the worker their regular hourly wage plus an additional $2.00 per hour and not take any taxes or withholdings out of these overtime hours.[6] KEITH KUZELKA advised that KSO has been failing to pay the required overtime rate to its employees for about 3 years.

28.     In or about December 2018, KEITH KUZELKA provided law enforcement with corroboration of the KSO overtime policy in the form of a letter titled, "KSO Overtime Privileges & Rules."  This letter outlines the overtime payment scheme described above and alerts employees that they will be paid "cash" payments of their normal hourly wage plus $2 with no payroll deductions withheld for all overtime hours worked above 50 hours.  According to KEITH KUZELKA, after the unauthorized workers returned to KSO as Company A temporary staff they were not given an overtime letter by KSO but they were still paid directly for any wages above 50 hours of work according to the KSO policy.

29.     KEITH KUZELKA said that DORA KUZELKA made the decision to pay all workers directly for the overtime at this reduced rate.  KEITH KUZELKA indicated that DORA KUZELKA would sign checks made out to "cash" and give them to the illegal alien employees to cover the overtime payments.  KEITH KUZELKA

---

[6] KEITH KUZELKA explained that for the first 10 hours of overtime, KSO paid Company A the funds to pay the illegal alien.  For overtime hours over 10 hours (50+ hours) KSO paid the illegal alien directly.

further stated that KARI KUZELKA and KENNETH KUZELKA would also occasionally sign the checks.

30.   KEITH KUZELKA provided me with an email dated April 15, 2018, from his mother DORA KUZELKA in which DORA KUZELKA instructed KEITH KUZELKA how to handle some of the overtime payments for the illegal alien employees. The email from DORA KUZELKA's account stated, "Regarding Ken Kon & Jennifer. Yes, they both received up 10 hrs o/t [overtime][7] after 47 hrs weekly anything over was the xtra2$ [extra $2.00 an hour above the employee's normal wage] only ken averaged about 5 [hours] with some less & some more however I do not recall ever over 7 so it should not be an issue with him. As for Jen, she averages 10 [hours of overtime] weekly so what I would suggest is at the end of each month we give her a gift check to compensate.  She is one of the most loyal & dedicated employee we have so she will understand. As for records: my sage program had all the notes & misc info regarding changes in salary, dept or special circumstance. One item that I will require is a weekly print out of the 401 & 401 [possibly referencing a 401K plan] loan deducts as that is not handled by PP [possibly referencing Precision Payroll the company] and that is how the payments are made & the determination is done for the match."

31.   KEITH KUZELKA informed agents that the illegal alien employees often worked 60 hours a week.  KEITH KUZELKA explained that Company A paid

---

[7] The bracketed language contains my interpretation of the words based on my training and experience as well as my knowledge of this investigation.

the illegal alien employee for up to 50 hours of work (40 regular hours and 10 overtime hours), but the remaining 10 hours of overtime was paid directly to the illegal alien employee by KSO via a check made out to "cash" and drawn on the KSO corporate bank account at Itasca Bank.

32.     KEITH KUZELKA explained that since KSO would directly pay the additional 10 hours of overtime, KSO management would deduct anything over 50 hours of work from the MIE Trak payroll system. KEITH KUZELKA stated that in or about April 2018 until about September 2018, that he would personally deduct those hours of overtime so that the MIE Trak system did not reflect that the illegal alien employee worked the 10 hours of overtime.

33.     According to bank records that were received from a subpoena of KSO's corporate bank account at the Itasca Bank thirteen employees listed on KSO's letter sent to HSI as having been terminated by September 14, 2017, were receiving KSO checks made payable to cash in 2018 and 2019.[8]

| Alien Name | Purported Date Fired by KSO: | Date Range of Identified Checks: | KSO Itasca Bank Account Number: | Total of KSO Cash Checks Identified to Date: | Total Value of KSO Cash Check(s) Issued: |
|---|---|---|---|---|---|
| R.A. | 8/25/2017 | 6/25/2018 - 1/14/2019 | 100716501 | 11 | $1,969.43 |
| J.C. | 9/12/2017 | 9/18/2017 | 100716501 | 1 | $147.12 |
| Mi. C. | 8/25/2017 | 6/26/2018- 12/4/2018 | 100716501 | 7 | $1,119.14 |

[8] The thirteen employees who received the "cash" checks were identified based upon their endorsement on the back of the "cash" check." The checks were signed by a combination of DORA KUZELKA, KENNETH KUZELKA and/or KARI KUZELKA on behalf of KSO.

| Ma. C. | 9/12/2017 | 2/23/2018-1/17/2019 | 100716501 | 21 | $5,743.26 |
|---|---|---|---|---|---|
| T.C. | 9/12/2017 | 9/25/2017-11/13/2018 | 100716501 | 10 | $1,595.62 |
| M.G. | 8/25/2017 | 8/15/2018-2/11/2019 | 100716501 | 12 | $9,046.62 |
| D.G. | 6/2/2017 | 4/3/2018-1/14/2019 | 100716501 | 11 | $2,909.00 |
| A.P. | 9/12/2017 | 10/11/2017-1/14/2019 | 100716501 | 16 | $1,872.94 |
| V.R. | 9/13/2017 | 9/29/2018-3/16/2018 | 100716501 | 7 | $1,707.30 |
| F.S. | 9/1/2017 | 3/26/2018-1/14/2019 | 100716501 | 23 | $11,084.95 |
| V.T. | 4/26/2017 | 2/23/2018-12/20/2018 | 100716501 | 5 | $3,565.00 |
| M.Y. | 8/25/2017 | 1/15/2019 | 100716501 | 2 | $620.00 |
| J.S. | 9/14/2017 | 3/26/2018-1/22/2019 | 100716501 | 19 | $2,522.90 |
| | | | | | $43,903.28 |

34. On December 19, 2018, KEITH KUZELKA provided me with a thumb drive in which he related contained various KSO documents. In particular, KEITH KUZELKA advised that the documents showed the names and employee identification numbers of illegal aliens that were re-hired by KSO after the HSI civil audit. KEITH KUZELKA stated that any employee that has the identification number with "TB" is an illegal alien working as a Company A contracted employee at KSO. KEITH KUZELKA further said that the "TB" number is used by the employment agency Company A. KEITH KUZELKA stated that in or about April 2018, he overheard KENNETH KUZELKA, Individual A, and KARI KUZELKA speaking about implementing identification numbers for the COMPANY A employees instead of listing the employees by their names. KEITH KUZELKA stated that he

believes that the "TB" numerical listing was an attempt to hide that Company A's temporary staff employees had the same names as the KSO employees terminated for being unauthorized alien workers after the civil audit.

35.     On December 27, 2018, KEITH KUZELKA emailed agents employee photographs and information that was taken from the "MIE-Trak" system. The release date on the photographs and information provided was stamped as, "11/2/2018." From the "MIE-Trak" information, I was able to determine that approximately 12 employees that were listed as terminated from KSO per the KSO September 14, 2017, letter were clocking their work hours in KSO's MIE Trak system. For example, the MIE-Trak report showed an employee named, "M.Y.". According to the KSO letter to HSI, M.Y. was terminated from employment with KSO on August 25, 2017.

36.     While undergoing a civil audit by HSI in 2018, Company A was served with an administrative subpoena by HSI that requested the names of all Company A employees and the company at which Company A had placed each employee as a temporary staffer as of March 7, 2018. Subsequently, Company A provided to HSI the names of eighteen employees that Company A was providing to KSO as temporary staff as of March 7, 2018. Each of these 18 identified employees of Company A on the payroll list for the week of March 11, 2018, were also listed as former KSO employees that were terminated by KSO in a letter sent to HSI and signed by DORA KUZELKA dated September 14, 2017. The 18 employees named on the Company A payroll list for the week of March 11, 2018 were: (1) V.T.; (2) M.G.; (3) R. A.; (4) J. C.; (5) Mi C.;

(6) G.D.; (7) D.G.; (8) O. J.; (9) Aa.P.; (10) M. Y.; (11) E. M.; (12) J. Z.; (13) P. V.; (14) D.H.; (15) Al. P.; (16) T. C.; (17) F. S.; and (18) J. C.

37.     In March 2019, law enforcement received records from the Illinois Department of Employment Security the State of Illinois wage records for KSO's employees. A review of these records indicated seven illegal aliens (J.C., L.C., M.C., M.G., A.P., V.T. and J.Z.) showed a taxable payroll shift from employment with KSO to employment by Company A during the third quarter of 2017 which was between July to September 2017. The transfer of employees from KSO to Company A was contemporaneous with HSI's audit of KSO which started in April 2017 and resulted in a notification of the names of the 36 unauthorized employees by HSI in the NOSD letter issued on September 6, 2017.

## C.     INDIVIDUAL A

38.     On January 16, 2019, law enforcement interviewed Individual A.[9] Individual A was the former Director of Administration and the Human Resources manager who worked at KSO for approximately 24 years. Individual A explained that DORA KUZELKA was overall in charge of KSO with input and advice from KENNETH and KEITH KUZELKA.

39.     Individual A was responsible for completing the Forms I-9 for the employees at KSO. Individual A stated she left KSO's employment in April or May 2018 after a verbal altercation with KEITH KUZELKA about the Forms I-9 that she

---

[9] Individual A has no criminal history and received no promises or benefits from law enforcement.

had prepared.[10] Individual A recounted that he/she was present for a meeting in which KENNETH KUZELKA and DORA KUZELKA informed the illegal alien employees about their termination from KSO.

40.     Individual A was asked by law enforcement if he/she was involved in the contract agreement between Company A and KSO. Individual A stated he/she was not involved in that agreement but that the KUZELKA family had meetings about it.

**D.     Y.R.**

41.     In June and July 2019, law enforcement interviewed a current KSO employee, Y.R.,[11] who was on the KSO list of terminated employees sent to HSI in September 2017.[12] Y.R. stated she started working for KSO in approximately 2001. Y.R. stated she was terminated from KSO by KENNETH KUZELKA in late August 2017 after the HSI audit began.

42.     Y.R. stated that approximately two to three weeks after being terminated, either Individual A or KENNETH KUZELKA contacted her and

---

[10] According to Individual A, KARI KUZELKA took over the role of human resources director after Individual A left KSO.

[11] Y.R. has acted as the Spanish translator for KSO and the non-English speaking employees. Y.R. has no criminal history but has admitted to investigating agents that she has used false identity information in the past to open credit cards. Y.R. further admitted to committing marriage fraud by entering into a fraudulent marriage in order to obtain an immigration benefit. Y.R. has not been charged for any crimes. Y.R. currently has legal immigration status now although Citizenship and Immigration Services (CIS) is now aware that Y.R. has procured her legal permanent resident status through marriage fraud. In the future Y.R.'s legal immigrant status may be revoked by CIS or he/she may be placed into removal proceedings based upon her involvement in a marriage fraud. Y.R. has not been promised any assistance in relation to securing or maintaining his/her Legal Permanent Resident status. HSI has offered assistance to Y.R. in obtaining an employment authorization document for him/her for his/her cooperation in this investigation

[12] Y.R. worked at KSO under the alias J.C.

requested that she return to work at KSO. Y.R. stated she returned to work at KSO approximately two or three weeks after she was terminated from employment. Y.R. utilized a different name to work at KSO when she came back post-audit.[13] Since her return to KSO after her termination in late August 2017, Y.R. was being paid for her work at KSO by cash and by blank checks that she would write out to "cash" and endorsed. KARI KUZELKA usually paid Y.R. but on at least one occasion the endorsement on Y.R.'s check read "DORA KUZELKA." Y.R. believes that KSO's managers requested that she return to work because she has extensive knowledge of the KSO company operations and, if she did not return to work, KSO would lose money. Y.R. has not been employed by Company A as a temporary staff worker at any time.

43.     Y.R. stated that KENNETH KUZELKA told her to inform the illegal alien employees that they need to become legal U.S. citizens and KENNETH KUZELKA told her that he could provide the illegal alien employees with monetary assistance for immigration attorneys. Y.R. told KENNETH KUZELKA when she returned to work after her termination in late August 2017 that she did not want to appear on the KSO official payroll because of her pending application with DHS for an immigration benefit.

---

[13] Law enforcement believes that the KUZELKAS were all aware of Y.R.'s status as an illegal alien based in part upon the following: (1) her identification of the HSI letter as someone who provided suspect documents; (2) KSO's termination of Y.R. following the civil audit; (3) KSO's rehiring of Y.R. under an alias, despite Y.R. having working for KSO for 17 years, just weeks after her termination; (4) KSO's payment of Y.R. by cash checks following her rehiring; and (5) DORA KUZELKA paid for Y.R.'s immigration attorney.

44.     Y.R. stated she was provided with a KSO corporate credit card by DORA KUZELKA that is issued by Discover card and is permitted to spend $1,500 a month on personal charges using the KSO corporate credit card. Y.R. showed law enforcement the card, which had the name "KSO Metalfab, Inc," and the name "J C" which is not her actual name and was the name she used at KSO until she was terminated from employment in approximately late August 2017.

45.     According to the records received from Discover Financial Services, DORA KUZELKA is the primary Discover credit card holder on the KSO Metalfab, Inc. account. J.C. is an authorized card member with a card ending in: 4009. Discover Financial Services records showed that account number 4009 has made purchases from April 2017 through May 2019.

46.     Y.R. stated that after she returned to work at KSO around late August 2017, KEITH KUZELKA researched staffing agencies and discovered the Company A temporary staffing agency. Y.R. stated that KEITH KUZELKA told Y.R. to contact the terminated unauthorized employees and tell them to report to the Company A agency location in Bartlett, Illinois, in order to return to work at KSO as temporary employees of Company A.

47.     Y.R. further explained that KEITH KUZELKA told Y.R. to select whichever employees Y.R. wanted to be re-hired at KSO and explain to these former employees how they could return to their former positions by being supplied to KSO by Company A as temporary workers. According to Y.R., KEITH KUZELKA told Y.R. that Company A should fill out the I-9 forms for these former employees. Y.R. knew

who the hardest workers were at KSO and selected which former employees she contacted based upon /her opinion about their work ethic. Former employees of KSO also returned on their own and requested to be re-hired. Y.R. stated that some other former KSO unauthorized employees called each other about the new opportunity to return to their former KSO positions and then they contacted KSO directly to ask for their old jobs back.

48. Y.R. provided law enforcement with information regarding the alien employees that were terminated following the HSI audit who were later re-hired to work at KSO. The following 15 names were provided to HSI by Y.R. along with the KSO Department in which they work:

A.P. – Shipping department
D.H. – Spot welding department
M.C. – Sanding department
R.A. – Sanding department
M.Y. – Sanding department
J.Z. – Spot welding department
T.C. – Spot welding department
P.V. – Spot welding department
A.P. – Welding department
F.S. – Welding department
E.M. – Forming department
J.C. – Forming department
O.J. – Forming department
M.G. – Assembly department
D.G. – Hardware department[14]

---

[14] Thirteen of the names on the list provided by Y.R. were identical to names previously provided by KEITH KUZELKA as being temporary employees working at KSO in November 2018. Additionally, a review of KSO bank records confirm that 14 of the 15 employees identified on the list provided by Y.R. have endorsed cash checks issued by KSO following the HSI audit.

49.    Y.R. reported that all of the unauthorized workers were personally known to KSO management since it is a small workplace and the company had employed each for more than five years.   In early August 2019, Y.R. told law enforcement that KARI KUZELKA asked her to bring her some of the employees' paychecks from Company A so she could determine if Company A was completing the appropriate withholdings from their checks.

50.    KEITH KUZELKA instructed Y.R. in an email dated May 20, 2018, with the subject line "Temp Hours" to explain how KSO would directly pay Company A workers for overtime hours above 10 hours.  In the email KEITH wrote, "The most any of the employees we have that are through the temp service can have for the OT hrs.10 hrs per week." KEITH KUZELKA went on to instruct Y.R. that "I will need for you to let them know I will reduce their hours with the temp service to only show 10HRS. The extra hours we will give them a check ONLY for the $2.00 more per hour. Let me know after you tell them. This way I know they will know." Y.R. provided this email to investigating agents on or about June 19, 2019.

51.    Y.R. provided law enforcement with evidence that KENNETH and KARI KUZELKA were the managers that supervised, disciplined, and rewarded workers that Company A sent to KSO as temporary employees. For example, Y.R. provided agents with several email exchanges between herself and to KENNETH and KARI KUZELKA relating to pay raises that certain illegal workers from Company A would be getting from KSO based upon the KUZELKAs' assessment of their respective job performance.   On February 7, 2019, Y.R. inquired in an email to KENNETH

KUZELKA whether M.G. and A.P., both unauthorized employees being supplied to KSO by Company A, could expect a future pay raise. KENNETH KUZELKA replied to Y.R. that M. G. would definitely get a raise but that we "will have to wait and see" about A.P.

## E.   Y.R. UNDERCOVER RECORDINGS

52.   On June 19-20, 2019, law enforcement conducted an undercover (U/C) operation investigating KSO's managing owners, KENNETH and KARI KUZELKA. Law enforcement outfitted Y.R. with audio/video recording devices for the purpose of meeting with KENNETH and KARI KUZELKA.

53.   Law enforcement provided instructions for Y.R. to initiate conversations with KSO's managing owners regarding the employment of Company A's temporary staff workers who were former KSO employees and now known to be unauthorized for legal employment.   Y.R. was instructed to talk with KENNETH and KARI KUZELKA about the prior law enforcement stops of the illegal alien employees leaving the parking lot of KSO.[15]

54.   On June 19, 2019, Y.R. recorded a disciplinary meeting in which she translated for KARI KUZELKA.   KARI KUZELKA met with A.P. to discipline him for being tardy for work about four times in the previous five months.   KARI KUZELKA instructed A.P. to sign a document reflect that he had been counseled about his tardiness by KSO management.

---

[15] As detailed below, as part of this investigation, law enforcement made multiple traffic stops of KSO employees leaving the KSO parking lot to determine if the previously terminated illegal aliens were again working at KSO.

55.     On June 19, 2019, at approximately 10:59 a.m., Y.R. had a conversation with KENNETH KUZELKA in an office at KSO. The conversation focused on the employees who had been stopped in their vehicles near KSO by law enforcement. The following interaction occurred:[16]

> **Y.R.:** "Regular car, it says police on it, detectives; that's it. They want to see him, what else they ask you. First, why they pulled you. He say uhm they, they say that I was [unintelligible] street [unintelligible] they just by the library, they pulled me over. Uhm, they ask me, where I come from, said from work. Where you work. Ah, this this place. Uhm, can I see your uhm temp agency ID. And he showed them and the license. And okay, thank you, you can go; nothing else. J.Z. was there. Last week, [D.H.] he was pulled by uhm after [Unintelligible] the other day [Unintelligible] street, and he was pulled there. Same thing he says that they asked where he worked, and driver's license, and that's it. They checked that, and okay you can go. And it was two detectives too."

> **KENNETH KUZELKA:** "Well one thing they should be saying [Unintelligible], they should be saying they work for the temp agency."

> **Y.R.:** "Yeah, [D.H.] told them, I work on, I work on this place that I shouldn't work to the agen[cy], to this temp agency send me to this, to this place. Okay, give me the card from temp agency. So, [D.] he, he give them the card from the temp agency, supposedly they take a picture of his plates and now say you can go."

> **KENNETH KUZELKA:** "And that's what they should. If they get stopped, they don't work here, they work through the temp agency who sends them in right now [unintelligible]...Cause they don't work for me."

56.     D.H. and J.Z. were former KSO employees who were listed on the HSI NOSD letter from September 6, 2017 as being unauthorized for employment.

---

[16] The transcripts of the conversations described in this affidavit remain in draft form; to the extent quotations from the conversations are included, they are preliminary, not final. The summary of the recorded conversations described in this affidavit do not include all potentially criminal statements or topics covered during the course of the conversations described herein.

According to the Company A wage records, both men now work as Company A employees assigned to KSO. KENNETH KUZELKA later provided instruction to Y.R. for her to inform the illegal alien employees that, when driving to or from work, "[m]aybe they should be going different ways... Maybe go this way, go that way, you know whatever. Just, go different ways for a week or two just see what's going on."

57. On June 20, 2019, law enforcement conducted another U/C operation targeting KSO's managing owners. Again, Y.R. was outfitted with an audio/video recording devices. At approximately 1:49 p.m., while inside of the break room inside of KSO, Y.R. engaged in conversation with employee M.D.C. and KARI KUZELKA. The conversation again involved the law enforcement traffic stops of KSO employees. M.D.C. asked Y.R., "So they disappeared? [meaning surveillance vehicles]." KARI KUZELKA replied, "Well now that I went out there, they're done. They're like, well we're caught." KARI KUZELKA told Y.R. that if she observed any vehicles outside KSO that she "was going to take employee [T.C.] home." KARI KUZELKA stated: "So what I would do was if the car was there, I was gonna take [T.] home... For lunch and then go back and get him... to see if they follow me. Because you said it was [T.] right, the one day."

58. Later in the conversation KARI KUZELKA stated, "They work for a staffing company. They're a temporary company he should not have never said KSO. If he said KSO that's not good because we already got pinched so it's in the system, you know what I mean. [Unintelligible] worked for a staffing company. Let 'em sit at

the staffing company's parking lot, ya know what I mean. Somebody should be telling them not to say that."

### G.     INVESTIGATORY STOPS OF KSO EMPLOYEES

59.    From January 2019 to June 2019, the following eight individuals identified by HSI in the September 6, 2017 NOSD letter to KSO as being unauthorized for employment in the United States were encountered on law enforcement identification stops after there were observed leaving KSO's parking lot: (1) A.P.; (2) T.C.; (3) M.Y.; (4) G.D.; (5)O.J.; (6) D.H.; (7) J.Z.; and (8) M.G.[17]

---

[17] All eight aliens presented an Illinois temporary driver's license which identified themselves as the name listed above.

## CONCLUSION

60.   Based on the facts set forth above, I respectfully submit that there is probable cause to believe that the KUZELKAS engaged in a pattern and practice of continuing to employ aliens that were unauthorized for employment and alien harboring.


FURTHER AFFIANT SAYETH NOT

_____
Ryan M. Ribner
Special Agent
Homeland Security Investigations


Subscribed and sworn
before me on this 11th day of October, 2019

_____
Honorable M. DAVID WEISMAN
United States Magistrate Judge