UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 19 CR 780-1, 2, 3 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| DORA KUZELKA, KENNETH KUZELKA, and KARI KUZELKA, | ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

On December 18, 2019, the government charged Defendants Dora Kuzelka, Kenneth Kuzelka, Kari Kuzelka, Keith Kuzelka, and Sergio Badani in a twelve-count indictment with alien harboring and a pattern and practice of unlawful employment of aliens at the Kuzelkas' family-owned business, KSO Metalfab, Incorporated ("KSO").[1] Kenneth, joined by Dora and Kari, now seek to suppress evidence from a thumb drive that Keith produced to law enforcement on December 19, 2018, as well as any information the government learned as a result of the search of the thumb drive. Because Keith had actual, or at least apparent, authority to consent to law enforcement's search and use of the documents provided in the thumb drive, the search did not violate the Fourth Amendment. The Court therefore denies the motion to suppress.

**BACKGROUND**[2]

KSO is a metal fabrication business located in Streamwood, Illinois and owned primarily by five members of the Kuzelka family, including Dora, Kenneth, Kari, and Keith. Keith

---

[1] The Court will refer to the Kuzelka co-defendants by their first names individually and collectively as the Kuzelkas. Keith has pleaded guilty to Count 12 of the indictment and awaits sentencing. Badani pleaded guilty to Count 1 of the indictment, and the Court sentenced him to a two-year term of probation.

[2] The Court draws the background section from the criminal complaint, search warrant affidavit, indictment, and the parties' briefs. Kenneth, Dora, and Kari failed to file a reply to the government's response, which the Court treats as a concession that the facts contained in the government's brief are true for the purpose of resolving the motion to suppress.

worked for KSO in a full-time role from 2010 until September 19, 2018 as both an owner and a sales manager. He also assisted in certain human resources functions, with responsibility for filing hourly employment paperwork. On the day of his termination, KSO terminated Keith's access to the KSO network and building, with Keith allowed only to return to the building once to retrieve personal items. Keith did not access the KSO server after his termination on September 19, 2018, and he returned his KSO computer to the company as requested. He did retain hard copy and electronic KSO documents he had had at home, however, because KSO did not request that he return these. Despite his termination in September 2018, Keith remains a part-owner of KSO.

Several years before Keith's termination, on or about May 21, 2015, Homeland Security Investigations ("HSI") received an anonymous tip that KSO was employing approximately forty undocumented workers. Based on that tip, an HSI investigator conducted a civil audit of KSO in 2017, which uncovered that KSO employed thirty-six undocumented workers using suspect fraudulent work authorization documents. HSI notified the Kuzelkas of the findings on September 6, 2017 by serving a Notice of Suspect Documents that listed each of the thirty-six KSO employees who used suspected fraudulent documents. On September 14, 2017, the Kuzelkas responded in a letter, signed by Dora, reporting that they had terminated all of the identified employees. In spring 2018, KSO agreed to pay a civil fine and to cease and desist from further violations, with Keith signing the settlement agreement on KSO's behalf. But from May 2017 to October 2019, KSO hired back approximately seventeen of the undocumented workers through a temporary staffing company located in Chicago, with help from Badani, the staffing company's vice president of operations. The Kuzelkas all knew of and participated in the rehiring of the undocumented workers.

After his termination, in December 2018, Keith contacted law enforcement to alert them to the reemployment of the previously identified undocumented workers at KSO. He met with HSI Special Agent Ryan Ribner on December 7, 2018 and provided Ribner with additional information. Twelve days later, Keith provided Ribner with a thumb drive that contained documents from KSO. The documents included KSO time sheets, payroll calculations, and hourly reports. HSI then sent the thumb drive to a forensic examiner who downloaded the contents of the drive for investigators to examine.

Nearly a year later, on October 11, 2019, HSI obtained a search warrant for KSO's office. HSI based the request for the search warrant in part on the information contained on the thumb drive that Keith turned over to the government, which HSI had reviewed against KSO's employee records. Based on the information Keith provided, investigators also subpoenaed KSO bank statements, thereby matching those statements with the documents contained on the thumb drive.

## ANALYSIS

Kenneth, Dora, and Kari argue that Keith had no authority to hand over materials to the government and consent to the search of those materials; thus, the search violated the Fourth Amendment and invaded the Kuzelkas' privacy. The government contends that Keith lawfully owned and possessed the documents provided to law enforcement and thereby had actual, or at least apparent, authority to consent to HSI's search of the materials.

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. Const. amend. IV. "A search is generally considered unreasonable unless the government obtains a warrant issued upon probable cause." *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000). A number of exceptions to this general rule exist, however. *Id*. Relevant here is

actual or apparent authority to consent to a search. *United States v. Gevedon*, 214 F.3d 807, 810 (7th Cir. 2000). "Law enforcement officers may . . . legally search without a warrant if they obtain voluntary consent from the person whose property is to be searched or from someone with actual or apparent authority over the premises." *Id.* (citations omitted); *see also United States v. Matlock*, 415 U.S. 164, 171 (1974) ("[W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."). This legal theory arises from the concept of assumption of risk, in that, "where a defendant allows a third party to exercise actual or apparent authority over the defendant's property, he is considered to have assumed the risk that the third party might permit access to others, including government agents." *Basinski*, 226 F.3d at 834; *see United States v. Jacobsen*, 466 U.S. 109, 117 (1984) ("It is well-settled that when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information."). Actual authority "rests on whether there is mutual use of the property by persons generally having joint access or control for most purposes," *United States v. Ryerson*, 545 F.3d 483, 487 (7th Cir. 2008) (citations omitted), whereas "[u]nder the apparent authority type of third-party consent, the government must show that a reasonable person, with the same knowledge of the situation as that possessed by the government agent to whom consent was given, would reasonably believe that the third party had authority over [the material] to be searched [or seized]," *Basinski*, 226 F.3d at 834; *see United States v. Groves*, 470 F.3d 311, 319 (7th Cir. 2006) ("For the apparent authority analysis, the court must consider what the officers knew at the time they sought . . . consent and

4

whether those facts were sufficient to demonstrate that the officers reasonably, but erroneously, believed that [the consenting person] possessed shared authority as an occupant.").

Here, although Keith was no longer employed by KSO in December 2018 when he met with HSI, he remained a part-owner of KSO. And, according to the government, KSO did not request that Keith return any documents he had in his possession after his termination, instead only asking that he return his computer. The government also maintains that Keith did not have access to the KSO server after his termination and so had possession of all the documents on the thumb drive before that time. Indeed, it is telling that Kenneth, Dora, and Kari concede that "it matters not . . . that the contents of the thumb drive had been compiled by Keith beforehand." Doc. 128 at 5. Thus, treating the government's assertions as true, Keith lawfully possessed the documents he turned over to HSI through his prior employment with KSO and his status as a part-owner of KSO and so had actual authority to consent to the government's search of the thumb drive. *See Ryerson*, 545 F.3d at 487 (the defendant's ex-wife had actual authority to consent to searches, as "[t]here is no evidence that Lawicki had quit her managerial role or sold her stake in the company before the search" meaning that "Lawicki still had a right to access the company records kept in the basement of the house"); *United States v. Koutromanos*, No. 15-CR-131, 2016 WL 1688011, at *3 (E.D. Wis. Apr. 27, 2016) (a third party had actual authority to consent to the government's acquisition of restaurant records because he remained a 50% owner of the business, had signature authority over the business bank account, and controlled the business licenses).

Moreover, even if Keith did not have actual authority to consent to the search, it was at least reasonable for the HSI agents to believe that Keith lawfully possessed the thumb drive and thus had apparent authority to consent to its search. *See Basinski*, 226 F.3d at 834 ("[A]pparent

authority turns on the government's knowledge of the third party's use of, control over, and access to the [materials] to be searched, because these characteristics are particularly probative of whether the individual has authority over the property."). Given their past involvement in the civil audit of KSO, HSI knew that Keith had access to KSO's records and remained a part-owner. In fact, Keith met with HSI in early 2018 and signed the settlement agreement that finalized KSO's total fine from the audit. Moreover, Keith dealt with various human resources responsibilities, including filing hourly employment paperwork, while employed by KSO, giving HSI further reason to believe he had authority to possess the documents on the thumb drive. Thus, even though KSO had terminated Keith's employment prior to his turning over the thumb drive, because he remained a part-owner of KSO and had direct involvement with the civil audit of KSO, the HSI agents could reasonably believe that Keith had the authority to consent to a search of the materials. *See United States v. King*, 627 F.3d 641, 648 (7th Cir. 2010) (restaurant employee had apparent authority to consent to a search of the restaurant because his "actions clearly justified the officers' belief that he had full control over the premises, including the authority to grant access to others," even though "the officers knew that [he] was not the owner"). Therefore, because Keith had actual, or at least apparent, authority to consent to the search of the thumb drive, the Court cannot find a Fourth Amendment violation.[3] *See United States v. Aldridge*, 642 F.3d 537, 543 (7th Cir. 2011) ("Because Rivera had authority to consent,

---

[3] The government also argues that Keith provided the thumb drive to the government as a private actor and not as a government agent. Because the government's warrantless search fits within the consent exception to the warrant requirement, the Court need not address this issue. *See Koutromanos*, 2016 WL 1688011, at *2 ("[A] finding that a private party acted as a government agent does not automatically direct suppression; it simply triggers a Fourth Amendment analysis. If the government's warrantless search fits within an exception to the warrant requirement, such as consent, there is no Fourth Amendment violation." (citations omitted)). Further, because the Court finds that Keith had at least apparent authority to consent to the search, *Walter v. United States*, 447 U.S. 649 (1980), on which Kenneth, Dora, and Kari extensively rely, has no relevance to the Court's decision.

6

and did consent, to the government's acquisition of the materials, the government required no warrant for its search.").

## CONCLUSION

For the foregoing reasons, the Court denies Kenneth, Dora, and Kari Kuzelka's motion to suppress [128].

Dated: July 12, 2021

_____
SARA L. ELLIS
United States District Judge